IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREATER PENNSYLVANIA                )
CARPENTERS PENSION FUND, On Behalf  )
of Itself and All Others Similarly Situated,  )
                                    )
                Plaintiff,          )        No. 04 C 1107
                                    )
        v.                          )
                                    )
WHITEHALL JEWELLERS, INC., et al.,  )
                                    )
                Defendants.         )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

This is a purported class action lawsuit on behalf of a class of persons who purchased

Whitehall Jewellers, Inc. stock during a specified time period. Plaintiff has alleged that

Defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"),

15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act,

15 U.S.C. § 78t-1. Defendants have moved to dismiss the First Amended Consolidated

Complaint ("FAC") in this case for lack of standing and pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim. For the reasons discussed below, Defendants'

motions are denied.

## FACTUAL BACKGROUND[1]

Lead Plaintiff Greater Pennsylvania Carpenters Pension Fund (the "Pennsylvania Fund")

brings this securities fraud suit on behalf of all persons who acquired the common stock of

---

[1] The Court set forth the factual allegations in detail in its January 10, 2005 opinion and
will not repeat them here. *See Greater PA Carpenters Pension Fund v. Whitehall Jewellers,
Inc.*, No. 04 C 1107, 2005 WL 61480, *5 (N.D. Ill. Jan. 10, 2005).

Whitehall Jewellers, Inc.("Whitehall") between November 19, 2001, and December 10, 2003 (the "Class Period"). Defendant Whitehall Jewellers, Inc., ("Whitehall") a Delaware corporation, has its principal offices located in Chicago, Illinois. Whitehall is a specialty retailer of fine jewelry operating through 384 mall-based stores in 38 states under the following brand names: Whitehall Co. Jewellers, Lundstrom Jewelers, and Marks Brothers. Its stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "JWL." (*Id.* ¶ 15.)

Plaintiff also brings this suit against multiple individual defendants. Defendant Hugh Patinkin serves as Chairman of the Board, Chief Executive Officer ("CEO"), and President of Whitehall. Patinkin signed most of Whitehall's quarterly and year-end financial statements. (*Id.* ¶ 16.) Defendant John H. Browne served as Whitehall's Chief Financial Officer ("CFO"), Treasurer, and Executive Vice President until Whitehall fired him on approximately December 11, 2003. Plaintiff alleges that Browne approved Whitehall's false and misleading press releases and signed and/or certified the majority of Whitehall's quarterly and year-end reports filed with the Securities and Exchange Commission ("SEC"). (*Id.* ¶ 17.) Defendant Matthew Patinkin is Whitehall's President of Operations, who allegedly approved Whitehall's false press releases and signed the year-end SEC reports. (*Id.* ¶ 18.) Defendant John Desjardins is Whitehall's interim CFO and Executive Vice President of Operations. Desjardins previously served as Whitehall's Executive Vice President of Finance and Administration. (*Id.* ¶ 19.) Defendant Manny Brown was Whitehall's Executive Vice President of Operations during the Class Period, and had responsibility for the Company's daily operations. (*Id.* ¶ 20.) (Collectively, Hugh Patinkin, Browne, Matthew Patinkin, Desjardins and Brown are referred to as the "Individual Defendants").

Plaintiff alleges that during the Class Period, Defendants engaged in fraud and reported false and misleading financial results and guidance for the fiscal quarters and full years ended 2000, 2001, 2002, and the first two quarters of 2003. It alleges that Defendants concealed inventory schemes that resulted in Whitehall fraudulently inflating its inventory, net income, and earnings. These inventory schemes resulted in two financial restatements, occurring in March 2003 and December 2003. Even after the initial restatement, Plaintiff alleges that Defendants continued to engage in the fraudulent scheme. Plaintiff alleges that Defendants' fraud artificially inflated the price of Whitehall's stock. According to Plaintiff, those who purchased Whitehall stock during the Class Period suffered damages as a result of its artificially inflated price.

## PROCEDURAL HISTORY

Lead Plaintiff, the Pennsylvania Fund, filed the first complaint in this case on February 12, 2004. (R. 1-1.) On February 19, 2004, Plaintiff Milton Pfieffer filed a class action complaint against Defendants and included a "Certification of Named Plaintiff Pursuant to Federal Securities Laws." (R. 1-1, 04 C 1285.) Three additional plaintiffs – Joshua Kaplan, Jerome Usheroff, and Michael Radigan – filed similar actions after Pfieffer filed his complaint. On April 9, 2004, the Court consolidated these cases. On April 14, 2004, the Court granted the Pennsylvania Fund's unopposed motion for appointment as lead plaintiff in this case pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u- 4(a)(3). (R. 9-1.) Pfieffer did not move to serve as Lead Plaintiff in this case. As Lead Plaintiff, the Pennsylvania Fund filed a Consolidated Amended Complaint on June 14, 2004. (R. 14-1.) Defendants moved to dismiss that complaint, and on January 10, 2005, the Court granted Defendants' motion to dismiss Plaintiff's Consolidated Amended Complaint in part and denied it in part. *See Greater*

*PA Carpenters Pension Fund*, 2005 WL 61480, *5.  In its opinion, the Court held that Plaintiff had pled loss causation, had stated a claim for securities fraud under Section 10(b) and Rule 10b-5, and had stated a claim for control person liability under Section 20(a) of the Exchange Act.  The Court further held that the Pennsylvania Fund does not have standing to pursue the Section 10(b) claims for allegedly fraudulent statements made by Defendants after June 6, 2002.  The Court dismissed such claims  without prejudice, and gave the Pennsylvania Fund leave to file an amended complaint addressing the standing deficiency.

On February 10, 2005, Plaintiff filed its First Amended Consolidated Complaint (the "FAC").  Defendants subsequently moved to dismiss the FAC for failure to address the standing deficiencies identified by the Court in its January 10, 2005 opinion.

After the Supreme Court issued its opinion in *Dura Pharms., Inc. v. Broudo*, 544 U.S. __, 125 S.Ct. 1627 (2005) on April 19, 2005, the Court requested additional briefing from the parties on the issue of loss causation.  Defendants addressed this issue in a separate submission and moved the Court pursuant to Rule 12(b)(6) to dismiss the FAC for failure to plead loss causation.

## ANALYSIS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case.  *Triad Assoc., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989).  The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Centers v. Centennial Mortgage, Inc*., 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  In making its determination, the Court must assume the truth of the facts alleged in the pleadings,

construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Id.*

In assessing the merits of Defendants' motions, the Court must also look to the PSLRA. "The PSLRA creates rules that judges must enforce at the outset of the litigation." *Asher v. Baxter Intern. Inc.,* 377 F.3d 727, 728 (7th Cir. 2004).

## I.    Named Plaintiff

In its January 10, 2005 opinion, the Court held that Lead Plaintiff – the Pennsylvania Fund – does not have standing to pursue the Section 10(b) claims for allegedly fraudulent statements made by Defendants after June 6, 2002, because the Pennsylvania Fund's last purchase of Whitehall stock took place on June 6, 2002.[2]  Pursuant to *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411 (7th Cir. 1992), the Pennsylvania Fund does not have standing to bring such a claim based on Defendants' statements made after this date "because the statements could not have affected the price at which plaintiff actually purchased." *Id.* at 1420.  The Court dismissed these claims without prejudice, and enabled Plaintiff to amend its complaint in order to address the standing deficiency.  Although the Court noted several approaches taken by other courts regarding a lead plaintiff's standing[3], it did not address the legality of any of these approaches since the parties had not raised the issue. *See Greater PA Carpenters Pension Fund*,

---

[2] Plaintiff attempts to reargue the Court's holding regarding the Pennsylvania Fund's standing.  Plaintiff, however, has not identified any manifest error of law or fact.  Accordingly, its attempt to reargue the issue fails.

[3] Some courts have allowed more than one lead plaintiff to be named, and some courts have permitted plaintiffs to name class representatives who have standing to proceed on the claims at issue. *See Greater PA Carpenters Pension Fund*, 2005 WL 61480 at **7,8.   Rather than address the propriety of any of these approaches recognized by other courts, Defendants only challenge Milton Pfeiffer's ability to serve as a representative party.

2005 WL 61480 at *8.

In the FAC, the Pennsylvania Fund did not add another Lead Plaintiff. Instead, Plaintiff added Milton Pfeiffer as a "representative party" in the FAC. (R. 40-1, FAC ¶ 14.) Plaintiff alleges that Pfeiffer purchased Whitehall stock at artificially inflated prices on October 27, 2003 – after Defendants made the alleged false statements – thus he has standing to bring the Section 10(b) claim based on post-June 6, 2002 statements. (*Id.* ¶ 14.) Plaintiff further alleges that Lead Plaintiff is acting on behalf of Pfeiffer and the plaintiff class. (*Id.*)

Defendants challenge Milton Pfeiffer's role as a representative party. Defendants have moved to dismiss any allegations in the FAC based on allegedly false statements or omissions made after June 6, 2002[4] – the date after which the Court held that the Pennsylvania Fund does not have standing – on the ground that Pfeiffer cannot serve as a "representative party" based on the PSLRA's requirements. Specifically, Defendants argue that Pfeiffer has not filed a PSLRA sworn certification with the FAC and that he fails to satisfy the requirements of a representative party.

## A.    Sworn Certification

The PSLRA details certain sworn certification requirements for a plaintiff who is "seeking to serve as a representative party on behalf of a class." 15 U.S.C. § 78u-4(a)(2)(A).

---

[4] Although Plaintiff argues in a footnote that the Court should extend the Class Period based on Lead Plaintiff's standing until June 12, 2002 because the Pennsylvania Fund's last purchase of Whitehall stock took place on June 13, 2002, the FAC alleges that the Lead Plaintiff's last purchase date of Whitehall securities during the Class Period is June 6, 2002. (R. 40-1, FAC ¶ 14.) Similarly, the Pennsylvania Fund's sworn certification filed with its original complaint also reflects that it last purchased Whitehall stock on June 6, 2002. (R. 1-1, Schedule A to Cert. of Named Pl.) Accordingly, the June 6, 2002 date in the Court's January 10, 2005 opinion stands.

Namely, such a plaintiff must file a sworn certification that:

> (i) states that the plaintiff has reviewed the complaint and authorized its filing;
> (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;
> (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;
> (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;
> (v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and
> (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).

15 U.S.C. § 78u-4(a)(2)(A).

Defendants argue that Pfeiffer is a "professional plaintiff" who has filed at least nine other federal securities class action lawsuits within the past three years. Defendants contend that Pfieffer's sworn certification from his original filing of a class action complaint against Whitehall on February 19, 2004 is inadequate because he failed to identify the other actions where he *sought* to serve as a class representative, as required under the PSLRA. The Court agrees. In his first certification, Pfeiffer certified that he had "not served as a class representative in any federal securities fraud case in the last 3 years." Pfeiffer failed to address – as he must – whether he *sought to serve* as a representative party on behalf of a class in any such action. This failure directly conflicts with the plain language of the statute.

In an effort to cure any defect, Plaintiff attached a sworn declaration of Pfeiffer to the opposition to Defendants' motion to dismiss. In this declaration, Pfeiffer states that "I have never filed a motion to become a lead plaintiff or class representative in any federal securities fraud class action in the past three years." (R. 48-1, Pfeiffer Decl., ¶ 7.) This sworn statement,

however, does not answer the question of whether Pfeiffer has sought to serve as a representative party on behalf of a class. Pfeiffer still has not complied with the mandates of the PSLRA for those seeking to serve as a representative party. The Court will give Plaintiff Pfeiffer until July 20, 2005 to file an amended certification addressing this deficiency and identifying "any other action" during the 3-year period prior to the date of the signed amended certification "in which the plaintiff has sought to serve as a representative party on behalf of a class."

If Pfeiffer fails to submit this certification, he cannot seek to serve as a representative party in this case, and the Court will dismiss any allegations after June 6, 2002 for lack of standing. Alternatively, Plaintiff can seek to address the standing deficiency identified in the Court's January 10, 2005 Opinion in some other manner.

Defendants also argue that Pfeiffer's certification is defective because he must file a separate, revised certification with each amended complaint, specifically addressing the lawsuits where he sought to serve as a representative party. The Court need not address this issue because Pfeiffer's amended certification will moot it.

### B.    Representative Party

Defendants next argue that even if Pfeiffer files an amended certification, he is not qualified to serve as a representative party because he has filed nine federal securities class actions in the three years prior to the filing of the amended complaint in this case, and he only purchased 5 shares of Whitehall stock during the Class Period for $58.30 just before the close of the Class Period. In essence, Defendants argue that Pfeiffer is a "professional plaintiff" and unfit to serve as a representative party in this case.

Defendants essentially challenge Pfeiffer's adequacy as a class representative. The

PSLRA, however, does not provide a vehicle for the Court to address his adequacy at this stage of the litigation. Although the PSLRA provides a basis for courts to scrutinize a Lead Plaintiff who will actively represent the class, the PSLRA does not provide an independent method for courts to scrutinize class representatives at the early stages of the litigation. Once a potential representative party complies with the PSLRA's certification requirements, the Court must wait to address class representative issues under Rule 23's standards. The PSLRA does not alter Rule 23. *See Franklin High Yield Tax-Free Income Fund v. City of Baudette*, No. 98-CV-1576, 1999 WL 33912055, *5 (D.Minn. Sept. 13, 1999).

## II.    Loss Causation

Loss causation – "a causal connection between the material misrepresentation and the loss" – is an element of a securities fraud claim brought pursuant to Section 10(b). *Dura Pharms., Inc. v. Broudo*, 544 U.S. __, 125 S.Ct. 1627 (2005). Defendants previously challenged Plaintiff's loss causation allegations. After analyzing the parties' respective position, in its January 10, 2005 opinion, the Court concluded that "[v]iewing the complaint in the light most favorable to Plaintiff, the Court can reasonably draw the inference that the loss was caused by the alleged fraud at issue." *Greater PA Carpenters Pension Fund*, 2005 WL 61480, *5.

On April 19, 2005, the Supreme Court in *Dura Pharms* addressed the issue of loss causation in securities fraud cases.[5] *Dura Pharms,* 125 S.Ct. 1627, 1631-34. The *Dura Pharms.* Court found the plaintiffs' mere allegation that it "'paid artificially inflated prices for Dura's securities' and suffered 'damage[s]'" insufficient to plead loss causation. The Supreme Court

---

[5] Following that opinion, the Court asked the parties to submit additional briefing on what effect, if any, the *Dura* holding has on Plaintiff's loss causation allegations.

noted the deficiency in this allegation:

> The statement implies that the plaintiffs' loss consisted of the "artificially inflated" purchase "prices." The complaint's failure to claim that Dura's share price fell significantly after the truth became known suggests that the plaintiffs considered the allegation of purchase price inflation alone sufficient. The complaint contains nothing that suggests otherwise.

> [T]he "artificially inflated purchase price" is not itself a relevant economic loss. And the complaint nowhere else provides the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation concerning Dura's "spray device."

*Id.* at 1634.

The Supreme Court expressly noted that Federal Rule of Civil Procedure 8(a)(2) governs a plaintiff's allegations of loss causation, not Rule 9(b), and that pleading loss causation is "not meant to impose a great burden upon a plaintiff." *Id.* at 1634. It further noted that "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind. At the same time, allowing a plaintiff to forgo giving any indication of the economic loss and proximate cause that the plaintiff has in mind would bring about harm of the very sort the statutes seek to avoid." *Dura*, 125 S.Ct. at 1634.

These principals articulated by the Supreme Court do not affect the Court's prior ruling in this case regarding loss causation. The Court analyzed the allegations regarding loss causation and concluded that Plaintiff had sufficiently alleged that "the loss was caused by the alleged fraud at issue." *Greater PA Carpenters Pension Fund*, 2005 WL 61480 at *5. Plaintiff has alleged more than simply inflation of the purchase price.

## CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss are denied. Plaintiff

10

Pfeiffer has until July 20, 2005 to file an amended certification addressing the deficiency in his original certification as discussed above, and to identify "any other action" during the 3-year period prior to the date of the signed amended certification "in which the plaintiff has sought to serve as a representative party on behalf of a class."  If Pfeiffer fails to file this certification or if Plaintiff fails to identify another remedy to the standing problem, the Court will dismiss any allegations after June 6, 2002 for lack of standing.

Date:  June 30, 2005

                                        ENTERED

                                        _____

                                        AMY J. STUEVE
                                        United States District Court Judge